# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDRE JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 14 C 6746 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| CITY OF CHICAGO, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Andre Jackson has sued the City of Chicago and two Chicago police officers, Brandon Smith and Dennis Huberts (collectively "officer defendants"), under 42 U.S.C. § 1983 for use of excessive force and for malicious prosecution. Jackson pleads a *Monell* claim seeking to hold the City vicariously liable for the officer defendants' alleged constitutional violations. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978). Discovery began by April 2017. *See* Minute Entry, Apr. 12, 2017, ECF No. 57.

The City moves to bifurcate Jackson's *Monell* claim against it from his claims against the officer defendants,[1] and all defendants renew their motion to dismiss Count III of the Second Amended Complaint ("SAC", ECF No. 65), which pleads a malicious prosecution claim against the officer defendants. The court denies both motions. At this stage, the City has not shown that the particular circumstances of this case warrant bifurcation mainly because the relatively narrow issues presented by plaintiff's claims against the officer defendants and his *Monell* claim overlap such that bifurcation appears more likely to increase discovery costs than save them. The parties rely on factual material outside the pleadings in their briefing on the motion to dismiss. The

---

[1] All defendants join the motion to bifurcate. This order nevertheless describes it as the City's motion for simplicity and because the motion mainly affects the City's interests.

court declines to convert that motion to a summary judgment motion because further discovery would be required in any event and because the legal landscape surrounding plaintiff's Fourth Amendment claim is still emerging. *See* Fed. R. Civ. P. 12(d).

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to his SAC and the response to the defendants' motion to bifurcate,[2] the encounter that forms the basis for Jackson's claims began when the officer defendants, in plain clothes in an unmarked car, spotted plaintiff and suspected him of a curfew violation. Resp. to Mot. to Bifurcate 1, ECF No. 82. For this reason, the officers demanded that plaintiff come to the car and speak with them, but plaintiff, fearful, ran away. *Id.* The officers chased him into an alley (both in their vehicle and on foot) where they allegedly shot him four times in the back. *Id.*

Officer Smith claimed that he saw plaintiff armed with a firearm and that plaintiff fired twice at the officers. *Id.* Both officers shot plaintiff. SAC ¶¶ 8–9; Resp. to Mot. to Bifurcate 2. After the officers shot plaintiff, he was handcuffed and taken to the hospital where emergency surgery saved his life. Resp. to Mot. to Bifurcate 2. No firearm was found on plaintiff's person or in the vicinity of where he fell. SAC ¶ 13. A small handgun was found on a nearby roof, which the officers claimed was the gun they saw in plaintiff's possession, but no bullets were found in the gun, no cartridge casings were found that matched the gun, no gun residue was found on plaintiff's hands, and plaintiff's fingerprints were not found on the gun. *Id.*; Resp. to Mot. to Bifurcate 2. Fifteen spent cartridge casings from the officers' guns were found and collected. Resp. to Mot. to Bifurcate 2. Plaintiff asserts that defendant Smith later testified that

---

[2] When deciding a Rule 12(b)(6) motion, the court must "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016)).

he shot plaintiff first before plaintiff allegedly fired his shots, Resp. to Mot. to Bifurcate 2, and defendant Huberts testified that he did not recall seeing plaintiff with a weapon, *see* Tr. of Hr'g held Oct. 14, 2014, at 84:2–11, ECF No. 38-1 Ex. C, but also admitted shooting plaintiff after he was on the ground shot and bleeding, according to plaintiff, Resp. to Mot. to Bifurcate 2.

This case was stayed until March 11, 2016, pending the outcome of related criminal proceedings in state court. *See* ECF No. 33. As discussed more fully below, plaintiff ultimately agreed to plead guilty to one count of aggravated assault in exchange for the dismissal of fifteen counts against him. SAC ¶ 15. He received a sentence amounting to time served in pretrial detention, though that time amounted to over three years. *Id.*

Plaintiff then filed his First Amended Complaint in this action ("FAC"). ECF No. 34. Defendants moved to dismiss plaintiff's malicious prosecution claim, and the court granted that motion and dismissed Count III of the FAC without prejudice on January 26, 2017. ECF No. 47 at 8. The dismissal order allowed Jackson to "replead his malicious prosecution claim if he has facts to support his claim that the *nolle prosequi* order, in whole or in part, was indicative of his innocence." *Id.* In essence, the court left open the possibility of repleading the malicious prosecution claim if supporting evidence came to light in discovery. *See id.*

Discovery then began, and plaintiff filed his SAC, again pleading a malicious prosecution claim in Count III. Fact discovery closes on February 9, 2018. Minute Entry, July 7, 2017, ECF No. 75.

## II. MOTION TO BIFURCATE

The City moves for bifurcation of the claims against the officer defendants and the *Monell* claim against the City, as it does routinely in virtually every 42 U.S.C. § 1983 case involving both types of claims. The City in this case, as it usually does, cites judicial economy

(less discovery, fewer discovery issues, a shorter and less complex trial) and the lack of prejudice to plaintiffs (by virtue of the City's agreement to pay any compensatory damages awarded to the plaintiff in the suit against the officer defendants) as reasons for bifurcation, together with the fact that unless the plaintiff can show that the individual defendants violated his constitutional rights, there will likely be no *Monell* discovery and no trial of the *Monell* claim.

The court has discretion to bifurcate the claims as the City requests and to stay discovery on the *Monell* claim until the claims against the officer defendants are resolved. *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 894 (N.D. Ill. 2000); *see also* Fed. R. Civ. P. 42(b); 16(b)(3). The Federal Rules of Civil Procedure allow the court to order separate trials "where the efficiency of a consolidated trial is outweighed by its potential prejudice to the litigants." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). The applicable inquiry requires the court to look to the cases "peculiar circumstances" and weigh "considerations of convenience, economy, expedition, and prejudice." *Id.*; *see also Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) (citing *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999)) (bifurcation may not impinge on Seventh Amendment rights).

Bifurcation of *Monell* issues in § 1983 actions frequently expedites the disposition of the case, since the resolution of the claims against the individual officers may end the entire case (either because no infringement of plaintiff's constitutional rights is established or because the plaintiff is able to settle the case in a way that persuades him not to go further), after less complex discovery and a less complex trial. *Medina*, 100 F. Supp. 2d at 895. There are considerations that militate against bifurcation, however. There are circumstances where resolution of the claims against the individual officers does not eliminate the need for a trial of the *Monell* claim. *See id.* at 896. And if, after discovery and a trial on the individual claims, it is

4

necessary to begin discovery again and try the *Monell* claim, the result of the bifurcation will be a longer and more complex road to the case's disposition, including a second trial that is largely repetitive of the first. Moreover, there are non-economic benefits that flow from discovery (as well as a possible trial) of the *Monell* claim. Chiefly, an airing of the *Monell* claim through discovery assures transparency, and if problems in the City's policies and practices are revealed through discovery or trial, the likelihood of deterring future misconduct is significantly enhanced. *See generally Medina*, 100 F. Supp. 2d at 896–97. As is explained below, these non-economic benefits and the particular circumstances of this case, lead the court to deny the motion to bifurcate at this stage.

Jackson's *Monell* claim is closely connected to his allegations about the incident in question. He first asserts that both officer defendants have been sued for civil rights violations on numerous occasions other than the instant case (Smith four times and Huberts twice) and that there were thirteen misconduct complaints against the officers (this appears to be the combined total), none of which resulted in any discipline. SAC ¶ 24. Plaintiff alleges that these facts demonstrate a failure to discipline (as well as lack of accountability), *id.*, of which the City was well aware based on the recent findings of the Mayor's Task Force.[3] Further, plaintiff argues in response to the motion to bifurcate that the City's failure to enact a policy and train officers on proper police behavior in foot pursuits, particularly as in the case of minor ordinance violations such as occurred here, is the cause of what happened to him; plaintiff cites the recent DOJ report

---

[3] *See* Police Accountability Task Force, Recommendations for Reform: Restoring Trust between the Chicago Police and the Communities they Serve, Executive Summary 11–12 (2016), *available at* https://chicagopatf.org/wp-content/uploads/2016/04/PATF_Final_Report_Executive_Summary_4_13_16-1.pdf.

on this subject to show that there is a basis for his contention that the City's lack of a foot pursuit policy is a widespread policy (or lack thereof) which significantly contributed to his injury.[4]

While the above considerations frequently lead courts to grant the City's motion to bifurcate, plaintiff has adequately demonstrated in this case that the *Monell* issues are sufficiently enmeshed with the claims against the officer defendants that bifurcation at this point is likely to deprive Jackson of relevant information and impede rather than advance the search for truth. Moreover, the discovery that plaintiff says he needs is fairly specific and focused, and much of it would almost certainly be part of the discovery of the individual claims. For instance, Smith and Hubert's depositions likely need to be taken on the individual claims, and covering their disciplinary history will add only modestly to the depositions' cost and avoid any potential second depositions that would certainly need to be taken if the *Monell* claim was bifurcated. The court does not see how these issues will cause overwhelming or unfocused discovery.

With respect to defendants' concern about prejudice if the individual and *Monell* claims are tried together, the better time to evaluate that issue is shortly before trial, when the court (and the parties) will have a much better understanding of the evidence and its relevance to the individual and *Monell* claims. At that point, the court will be in a much better position than it is now to hear the parties on the subject of whether curative instructions to deal with any prejudice are likely to be effective. *See Hoskins*, 549 F.3d at 496 (affirming decision not to bifurcate in part because district court gave curative instructions at trial). And if at that point bifurcation looks appropriate, it may be possible to try both parts of the case to one jury and thereby avoid the significant duplication of evidence that two widely separated trials before different juries would cause.

---

[4] ECF No. 82 at 3–5; *see also* DOJ report, United States Department of Justice Civil Rights Division and United States Attorney's Office Northern District of Illinois, Investigation of the Chicago Police Department 151 (2017), *available at* https://www.justice.gov/opa/file/925846/download.

6

Given the particular circumstances of this case, the court denies the Defendants' Joint Motion to Bifurcate at this time. When discovery is complete, the court will be happy to revisit its decision if defendants can show that it is appropriate to do so.

### III. MOTION TO DISMISS MALICIOUS PROSECUTION CLAIM

Defendants have also moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Count III of the SAC for failure to state a claim. Count III alleges a claim of malicious prosecution under Illinois law, but Jackson alternatively contends that Count III should be analyzed as a Fourth Amendment claim in his response, *see* ECF No. 77 at 9–11. Either way, Defendants claim Count III must be dismissed for the same reason. They argue that Jackson cannot show an essential element of a malicious prosecution claim, the termination of the underlying criminal case in his favor, because the underlying criminal case was resolved by a plea of guilty to one count of aggravated assault in exchange for the *nolle prosequi* dismissal of fifteen other counts against him. As a Fourth Amendment claim, Count III fails, argue defendants, because Jackson's guilty plea establishes probable cause for his arrest.[5] Reply 5, ECF No. 81. The court cannot reach this issue now because the parties rely on evidence outside the SAC, and converting defendants' motion to dismiss into a summary judgment motion would be inappropriate. *See* Fed. R. Civ. P. 12(d).

To state a claim for malicious prosecution under Illinois law, plaintiff must allege facts establishing, among other things, that the subject criminal proceeding was terminated in plaintiff's favor in a manner implying the plaintiff's innocence. *Bridewell v. Eberle*, 730 F.3d

---

[5] Although the court does not reach the issue today, the court finds this argument hard to square with *Manuel*'s reasoning. The state court made a probable cause determination after arrest in *Manuel*, but the Supreme Court held that the plaintiff could nevertheless pursue a Fourth Amendment claim because, on the facts alleged in the complaint, "[a]ll that the judge had before him were police fabrications about the pills' content." 137 S. Ct. at 920. Like the *Manuel* plaintiff, Jackson alleges that Smith and Huberts falsified key evidence against him, and Jackson's SAC appears to allege facts from which it can be plausibly inferred that the false evidence tainted the decision to accept his plea. *See* cases cited *infra* at 12.

7

672, 677 (7th Cir. 2013). "A prosecutor's dismissal of a criminal charge *may* imply innocence, but *Swick* [*v. Liautaud*, 662 N.E.2d 1238, 1243 (Ill. 1996)] added that it does not do so when it is part of a plea bargain." *Id.* Specifically, the Illinois Supreme Court in *Swick* stated, "The abandonment of the [criminal] proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused . . . ." *Swick*, 662 N.E.2d at 1243 (citing Restatement (Second) of Torts §§ 660, 661 (1977)); *but see Deng v. Sears, Roebuck & Co.*, 552 F.3d 574, 576 (7th Cir. 2009) (rejecting rigid use of the Restatement (Second) of Torts when applying *Swick*). As the Seventh Circuit made clear in *Bridewell*, the plaintiff's argument that the charge was sure to be dismissed because the evidence was weak, the accusers were improperly interrogated and that key evidence like DNA and fingerprints was lacking makes no difference, because no Illinois case holds that the federal court can look past the guilty plea to try to figure out what would have happened if a plea agreement had not been reached. *Bridewell*, 730 F.3d at 677 (declining expressly to innovate Illinois law to look beyond these facts).

Jackson also pitches Count III as a Fourth Amendment claim under the Supreme Court's March 22, 2017, decision in *Manuel v. City of Joliet*, 137 S. Ct. 911. Abrogating a line of decisions beginning with *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001), *Manuel* holds that a plaintiff "objecting to a pretrial deprivation of liberty may invoke the Fourth Amendment when . . . that deprivation occurs after legal process commences." *Manuel*, 137 S. Ct. at 918. The *Manuel* court abrogated *Newsome*'s holding that once a pretrial detainee is held pursuant to legal process, the detainee must resort to the Fourteenth Amendment's due process clause, which is itself unavailable when state courts provide an adequate remedy for malicious prosecution. *See id.* at 916–17 (discussing *Newsome* and its progeny); *see also Serino v. Hensley*, 735 F.3d

8

588, 593–94 (7th Cir. 2013). The Supreme Court decided that the plaintiff in *Manuel* stated a Fourth Amendment claim (assuming it was timely) by alleging that police officers pulled his car over, that they found pills in a vitamin bottle, that a police technician falsely claimed that the pills tested positive for ecstasy, that the officers relied exclusively on that false evidence to initiate a prosecution, and that they presented the false evidence to a judge who made an ostensible probable cause determination based on it. *Manuel*, 137 S. Ct. at 915, 919–20. The Court left to the Seventh Circuit on remand the task of "determin[ing] the elements of, and rules associated with, an action seeking damages for [the Fourth Amendment] violation" recognized in *Manuel*. *Id.* at 920; *see also id.* at 920–21 (discussing possible analogy to state claim of malicious prosecution for analysis of statute of limitations on remand and leaving the question open); *Hendricks v. Lauber*, No. 16 C 627, 2017 WL 4899301, at *2 (N.D. Ill. Oct. 24, 2017) (recognizing that *Manuel* left this question open).

A close reading of the briefing on defendants' motion to dismiss reveals that defendants do not quarrel with the SAC at all. Rather, to establish the facts surrounding Jackson's charge in state court, his plea, and the disposition of the charges, the parties rely on exhibits attached to a previously filed motion to dismiss and the response to that motion: a certified statement of conviction dated March 1, 2016, ECF No. 36-1, and a transcript of a change-of-plea hearing held February 8, 2016, ECF No. 36-2. Jackson also cites these exhibits in his response. *E.g.*, ECF No. 77 at 1 n.1, 3; *see also* Indictment, ECF No. 38-1 Ex. D.

The parties seem to assume that the court will consider the exhibits they cite, but they offer no legal justification for doing so. Remember that defendants have filed a Rule 12(b)(6) motion to dismiss the SAC for failure to state a claim. ECF No. 71 at 1. Considering matters outside the pleadings ordinarily results in a Rule 12(b)(6) motion's conversion to a Rule 56

9

motion for summary judgment. *Ware v. Lake Cnty. Sheriff's Office*, No. 15 C 9379, 2017 WL 914755, at *2 (N.D. Ill. Mar. 8, 2017) (citing Fed. R. Civ. P. 12(d)). If a Rule 12(b)(6) motion is converted, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The court has discretion to decide whether to convert a Rule 12(b)(6) motion to a motion for summary judgment. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The conversion rule has two recognized exceptions. A court deciding a Rule 12(b)(6) motion "may also consider documents attached to the pleading without converting the motion into one for summary judgment." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c)). This exception does not apply here because the exhibits the parties cite are attached to a motion and response, and plaintiff did not attach exhibits to any of his complaints. The court can also take judicial notice of matters of public record (and other matters appropriate for judicial notice, *see* Fed. R. Evid. 201) without converting a Rule 12(b)(6) motion to a motion for summary judgment, "though caution is necessary." *Wigod*, 673 F.3d at 556 (citations omitted); *see also Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

While the court could take judicial notice of some of the documents the parties cite, it cannot notice all of them; conversion would be required. Since no party objects to the court's considering the indictment and transcripts of hearings held in Jackson's criminal case, this court, as it did when resolving the first motion to dismiss, could take judicial notice of them without converting the instant motion to a motion for summary judgment. *See Stewart v. Anderson*, No. 00 C 3056, 2000 WL 1741885, at *3 (N.D. Ill. Nov. 24, 2000) (citing *Doherty v. City of Chicago*,

75 F.3d 318, 324 (7th Cir. 1996) (other citation omitted) (taking judicial notice of transcript of change of plea hearing held in state court when deciding Rule 12(b)(6) motion). But in this iteration of his briefing, Jackson cites a police report in his response to attempt to show that the evidence against him was so weak that indicated he was innocent at least on some counts. ECF No. 77 at 1 n.1. As the SAC does not refer to the report, its consideration would require conversion to a summary judgment proceeding. *See Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 716 (7th Cir. 2013) (holding district court erred by considering affidavit because it was "not part of the pleadings," and "not 'referred to in the plaintiff[s'] complaint . . .'" (quoting *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)) (alterations in original)); *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012) (holding document is incorporated into the complaint if it is "central to the plaintiffs' claim," and it is "concededly authentic" (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009))). Admittedly, plaintiff cited this exhibit generally in the first round of briefing. ECF No. 38 at 1 n.1. Regardless, conversion would be required on this second round because defendants make a summary-judgment-type argument in their reply. *See* ECF No. 81 at 3. They argue that Jackson "provides no evidence to support his assertion" that the prosecutor amended one count of the indictment because probable cause was lacking. *Id.* Defendants then suggest their own explanation for the amendment, but like plaintiff, they cite no evidence. *See id.* The court would need to apply summary judgment principles to decide who wins, but without any evidence to explain the amendment, an opportunity for discovery would be necessary. *See Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002) (If "[t]he defendant [were] to submit a document in support of his Rule 12(b)(6) motion that required discovery to authenticate or disambiguate . . . [,]the judge would be required to convert the defendant's motion to a Rule 56 motion if he were minded to consider the document

11

in deciding whether to grant the motion."). Hence conversion would require an opportunity for discovery and probably a refiled motion for summary judgment once discovery was taken because the record on the history of Jackson's criminal proceedings is incomplete and underdeveloped.

The court therefore sees little to be gained in converting defendants' Rule 12(b)(6) motion to a motion for summary judgment and declines to do so. Conversion would be particularly imprudent here because the contours of a Fourth Amendment claim based on pretrial detention after legal process has commenced are just emerging in *Manuel*'s wake. *See Hendricks*, 2017 WL 4899301, at *2 (finding that plaintiff stated Fourth Amendment claim under *Manuel* by alleging that officers lied about finding him urinating in public and lied when they stated he failed to register as a sex offender); *McKenzie v. Teague*, No. 15 C 8190, 2017 WL 3841471, at *8 (N.D. Ill. Sept. 1, 2017) (denying defendants' motion for summary judgment under *Manuel* because genuine disputes over whether officers lacked probable cause existed). The court stresses that by declining to convert the instant motion to a motion for summary judgment, it does not pass on the sufficiency of the SAC itself, a matter which defendants' motion does not really put at issue. Nothing in this order should therefore be taken as resolving any legal question related to *Manuel* or Illinois' malicious prosecution law.

## IV. CONCLUSION

For the reasons stated, the City's motion to bifurcate, ECF No. 78, and the defendants' joint motion to dismiss Count III of the SAC, ECF No. 71, are denied.


Dated: December 12, 2017      /s/
                              Joan B. Gottschall
                              United States District Judge